Filed 8/19/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>KEVIN TOWNSEND,<br><br>     Defendant and Respondent. | A158082<br><br>(Alameda County<br>Super. Ct. No. 19-CR-005635) |

The California Department of Corrections and Rehabilitation (the Department) appeals from the trial court's order dismissing a parole revocation petition filed against Kevin Townsend and terminating his parole term. The Department argues the trial court improperly analyzed how Townsend's time spent absconding from parole supervision and in jail on parole violations altered his parole discharge date. We agree, and accordingly reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

On July 18, 2005, Townsend was convicted of transporting or selling a controlled substance (Health & Saf. Code, § 11352, subd. (a)) and was placed on felony probation, but after violating his probation was sentenced to three

years in prison. Townsend was released from prison on September 28, 2009, subject to a three-year parole term (1,095 days). His original parole release date was September 27, 2012.

From the start of his parole term until June 7, 2019, the date on which the trial court issued the order under review, Townsend absconded from parole supervision on nine occasions and was jailed five times for parole violations, repeatedly pushing back his parole release date. In total over this period, Townsend spent 896 days in the community on parole supervision, 2,309 days absconding from parole supervision, and 334 days in jail on parole violations. As a result of this behavior, the Department suspended his parole term for the 2,309 days he was at large and extended his parole term by the 334 days he was in custody, pushing his parole release date to December 23, 2019.

After Townsend absconded from parole supervision for the ninth time, a warrant was issued for his arrest on November 7, 2017. On March 19, 2019, Townsend was arrested on this warrant by the Atlantic City Police Department in New Jersey and transferred to state custody in California. On April 10, 2019, the Department petitioned the court to revoke Townsend's parole.

On June 7, 2019, the trial court denied the petition. The court reasoned Townsend's "parole may not be extended by the time he was in custody on the parole violation[s]" and as a result found Townsend's parole had expired "sometime after his release [from jail after a previous parole violation] in August of 2017." According to the trial court, Townsend was already off parole by the time the November 7, 2017, warrant for his arrest was filed. The court ordered the Department to terminate Townsend's parole.

2

On July 18, 2019, the California Attorney General, representing the Department, filed a motion for reconsideration. The Attorney General argued the trial court had erred in finding Townsend's parole release date was not extended for the time he spent in jail on parole violations. The Attorney General asserted Townsend's parole period did not end until December 23, 2019.

The trial court denied the motion for reconsideration. In a written order the court explained its reasoning, asserting "[t]here is no statutory authority for extending a parole term for incarceration that occurs after reinstatement" of parole, so the time Townsend spent incarcerated on parole violations after absconding could not extend his parole term. As a result, the court found Townsend's parole ended on October 7, 2017, and it reaffirmed the previous order dismissing the revocation petition and terminating Townsend's parole. In compliance with the court's order, Townsend was discharged from parole.

The Department timely appealed the court's order.

## DISCUSSION

The material facts in this case are undisputed. The calculation of Townsend's parole discharge date is a pure question of law. To answer, we interpret and apply Penal Code sections 3000, subdivision (b)(6) (section 3000(b)(6)), and 3064.[1] We review questions of statutory interpretation de novo. (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.)

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.) "First, we consider the statutory language and give the statute's words their usual and ordinary meaning.

---

[1] All undesignated statutory references are to the Penal Code.

[Citation.] The statutory language must be construed in the context of the statute as a whole and the overall statutory scheme, giving significance to every word, phrase, sentence, and part of an act. [Citation.] If the statutory language is unambiguous, the plain meaning controls and consideration of extrinsic sources to determine the Legislature's intent is unnecessary." (*People v. Pearl* (2009) 172 Cal.App.4th 1280, 1288 (*Pearl*).)

The "period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship" (§ 3000, subd. (a)(1)), so an offender released from incarceration after serving a prison sentence is subject to a period of parole, usually for three years (§ 3000, subd. (b)(1), (2)(A)). Section 3000(b)(6) provides, "Upon successful completion of parole, or at the end of the maximum statutory period of parole . . . whichever is earlier, the [parolee] shall be discharged from custody. The date of the maximum statutory period of parole . . . shall be computed from the date of initial parole and shall be a period chronologically determined. *Time during which parole is suspended because the [parolee] has absconded or has been returned to custody as a parole violator shall not be credited* toward any period of parole unless the [parolee] is found not guilty of the parole violation." (Italics added.) This provision exempting time spent absconding from parole supervision *and* time spent in jail on parole violations is the statutory language that resolves this case.

There is a limit on the total amount of time a parolee can be on parole supervision or jailed on parole violations. Section 3000, subdivision (b)(6)(A) (section 3000(b)(6)(A)) reads, "Except as provided in Section 3064, in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole." This means that Townsend's parole extends past

4

September 28, 2013 only "as provided in Section 3064." Section 3064 tolls the parole period while a parolee is at large. It reads, "From and after the suspension or revocation of the parole of any prisoner and until his return to custody he is an escapee and fugitive from justice and no part of the time during which he is an escapee and fugitive from justice shall be part of his term."

In *Pearl, supra*, 172 Cal.App.4th at p. 1290 our colleagues in the Fourth District held a parolee is not a fugitive from justice under the language of section 3064 when that individual is in custody on parole violations. But a parolee is, by definition, a fugitive from justice when that individual is absconding from parole supervision. Therefore, under section 3000(b)(6)(A) a three-year "parole term may not" be extended to "exceed four years plus the amount of time the parolee had been a fugitive from justice . . . regardless of how much time the parolee spends in confinement for parole revocations." (*Id.* at p. 1290.) That is, time spent absconding from parole supervision suspends the parole period indefinitely, while " '[t]ime spent in custody on a parole violation . . . extends the parole period' " such that a parolee " 'may not be retained on parole supervision or in custody on a parole violation for more than 4 years.' " (*Id.* at p. 1291.)

On September 28, 2009, Townsend was released from prison and began his three-year parole term. His initial discharge date was September 27, 2012. But after 14 days on parole supervision, Townsend absconded and spent the next 408 days at large. He was then jailed 21 days for this violation. Following section 3000(b)(6)'s mandate, the Department suspended his parole term for his absconding time and extended his term for the time he spent in jail, pushing his discharge date to November 30, 2013 (i.e., 408 plus 21 days after September 27, 2012). From there, Townsend absconded from

5

parole supervision eight more times and was jailed another four times on parole violations. In total through June 7, 2019, Townsend spent 896 on parole supervision in the community, 2,309 days absconding, and 334 days in jail on parole violations. Again following section 3000(b)(6)'s directive, the Department suspended Townsend's parole term by the number of days he spent absconding and extended his parole term by the number of days he spent in jail on parole violations, pushing his discharge date out by 2,309 plus 334 days from September 27, 2012. Because Townsend's 334 days in jail on probation violations totals less than a full year, the Department is correct that each day he spent in jail extended his parole term by a day, and that his discharge date had to be pushed out by 2,309 plus 334 days. (See § 3000(b)(6)(A).) As articulated below, none of these suspensions and extensions violated any other statutory provision. Doing the arithmetic, by June 7, 2019, Townsend still had 199 days to serve on parole supervision, and his parole discharge date was December 23, 2019. The trial court's miscalculated Townsend's parole release date and erred in ordering the Department to terminate Townsend's parole supervision.

The trial court's mistake was to conclude, "[t]here is no statutory authority for extending a parole term for incarceration that occurs after reinstatement" of parole. The trial court arrived at this conclusion by focusing on the language in section 3064 that tolls the period of parole while an absconder is a "fugitive from justice," which tolling lasts from revocation "until his return to custody." (§ 3064.) Because a parolee is no longer a "fugitive from justice" once "return[ed] to custody," the trial court read this language, in combination with section 3000(b)(6)(A), to mean "only a parolee's suspended time due to absconding can extend his parole term." We agree with the trial court that custody time imposed after a period of absconding

6

does not toll the parole period pursuant to section 3064.  But that same custody time does extend the parole period pursuant to section 3000(b)(6), which expressly extends a parole term by the time a parolee spends in custody on parole violations (limited by the four-year maximum provided in section 3000(b)(6)(A)).  The court in *Pearl, supra,* 172 Cal.App.4th at p. 1291 agreed, holding a parolee's " '[t]ime spent in custody on a parole violation . . . extends the parole period . . . [but] he or she may not be retained on parole supervision or in custody on a parole violation for more than 4 years' " plus the amount of time a parolee spends absconding from parole supervision.  Nothing in *Pearl* leads to the trial court's conclusion that a parolee's term cannot be extended *at all* after reinstatement by time spent in jail on a parole violation.[2]  The trial court erroneously fails to give Townsend's time spent in jail on parole violations for absconding its extending effect.

Townsend argues section 3000(b)(6)(A)'s four-year limit on parole means the Department's ability to extend his parole term during periods of reincarceration expired on September 28, 2013, four years after his parole began.  This is also incorrect.  That section states, "[e]xcept as provided in

---

[2] The trial court also found support for its conclusion in the language of section 3057, subdivision (b), which states:  "*Upon completion of confinement pursuant to parole revocation without a new commitment to prison, the inmate shall be released on parole for a period which shall not extend beyond that portion of the maximum statutory period of parole specified by Section 3000 which was unexpired at the time of each revocation.*"  (Italics added.)  The trial court ignored the italicized portion of this statute, which appears to acknowledge that a period of "confinement pursuant to parole revocation" will occur *before* the inmate is released to complete his unexpired parole term.  In any event, nothing in section 3057 contravenes the express language of section 3000(b)(6), which provides that both the "[t]ime during which parole is suspended because the [parolee] has absconded" *and* any period during which the parolee "has been returned to custody as a parole violator shall not be credited toward any period of parole . . . ."  (§ 3000(b)(6).)

Section 3064, in no case may a [parolee] subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole." Townsend interprets the phrase "in no case" to mean section 3000(b)(6)(A) "did not authorize [the Department] to extend [Townsend's] parole beyond four years from his initial date of parole." (Italics removed.) What he means by this is unclear, since he also pegs the expiration date for his parole as September 11, 2017, almost eight years after his parole began. Regardless, the argument fails because, as even Townsend acknowledges, "[t]he term '[e]xcept as provided in Section 3064, . . .' clarifies that a parolee's term can extend beyond four years 'from the date of his or her initial parole' to the extent that the parolee has absconded from parole." This means that in a case like Townsend's where a parolee absconds early, section 3064 tolls the initial four-year maximum period of parole, as the Department did in Townsend's case. Applying this tolling provision, none of the 2,309 days Townsend spent absconding from parole supervision counts against the four-year statutory maximum under section 3000(b)(6)(A). Townsend's maximum statutory period of parole was four years (1,460 days) plus the time Townsend spent absconding from parole supervision. Because Townsend had spent only 896 days on parole supervision in the community and 334 days in jail on parole violations (1,230 days combined) by June 7, 2019, the Department appropriately applied section 3000(b)(6)(A) in calculating that he was still on parole.

Based on his flawed reading of section 3000(b)(6)(A), Townsend also argues the Department should have terminated his parole on September 11, 2017, because by then "he had served 1,095 days of parole." But Townsend had served only 787 days on parole supervision in the community by September 11, 2017, well short of his parole term of 1,095 days. Applying

8

Townsend's logic would effectively credit the days he spent in jail on parole violations towards his parole term, directly contravening section 3000(b)(6)'s mandate that "[t]ime during which parole is suspended because the [parolee] has absconded *or has been returned to custody as a parole violator* shall not be credited toward any period of parole." (Italics added.) This we will not do.

## DISPOSITION

The judgment is reversed, and the matter remanded so the Department's parole revocation petition may be considered.

_____
TUCHER, J.

WE CONCUR:


_____
POLLAK, P. J.


_____
BROWN, J.

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Hon. Scott D. Patton |
| Counsel for Appellant: | Xavier Becerra, Attorney General; Phillip J. Lindsay, Senior Assistant Attorney General; Sara J. Romano, Supervising Deputy Attorney General; Michael G. Lagrama, Deputy Attorney General |
| Counsel for Respondent: | Randall Conner, by Court-Appointment under the First District Appellate Project's Independent Case System |