Filed 12/31/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br>Plaintiff and Appellant,<br><br>v.<br><br>DARRYL JOHNSON,<br>Defendant and Respondent. | A158081<br><br>(Alameda County Super. Ct.<br>No. 19-CR-008101)<br><br><br>ORDER MODIFYING OPINION<br>NO CHANGE IN JUDGMENT<br>PETITION FOR REHEARING<br>DENIED |

THE COURT:

It is ordered that the opinion filed herein on December 9, 2020, is modified in the following respect:

At pages 1-2, delete the following text:

"On August 20, 2007, while on parole, he was convicted of grand theft and possession of controlled substances for sale.  For these two new convictions, the trial court deemed defendant's sentences served but placed him on a new, overlapping three-year parole term to begin on August 20, 2007."

The deleted text is to be replaced with the following text:

"Thereafter, the trial court sentenced defendant on two other convictions he previously sustained—a 2003 grand theft conviction and a 2004 conviction for possession of controlled substances for sale.  For these convictions, the court deemed defendant's sentences served but

1

placed him on a new, overlapping three-year parole term to begin on August 20, 2007."

This modification does not change the judgment.

Defendant's petition for rehearing, filed December 22, 2020, is denied.

Date:    12/31/2020                    __FUJISAKI, J. Acting P.J.

A158081/*People v. Johnson*

Trial Court:      Alameda County Superior Court

Trial Judge:      Hon. Scott Patton

Counsel:    Office of Attorney General, Xavier Becerra, Attorney General, Phillip J. Lindsay, Senior Assistant Attorney General, Sara J. Romano, Supervising Deputy Attorney General, Michael G. Lagrama, Deputy Attorney General, for Plaintiff and Appellant.

First District Appellate Project, Jonathan Soglin, Jeremy Price, and Nathaniel Miller, for Defendant and Respondent.

Filed 12/9/20 (unmodified opinion)

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

<table>
<tr>
<td>
THE PEOPLE,<br>
Plaintiff and Appellant,<br><br>
v.<br><br>
DARRYL JOHNSON,<br>
Defendant and Respondent.
</td>
<td>
A158081<br><br>
(Alameda County Super. Ct.<br>
 No. 19-CR-008101)
</td>
</tr>
</table>

California Department of Corrections and Rehabilitation (CDCR) appeals from the trial court's order revoking and restoring defendant Darryl Johnson's parole, setting a new parole discharge date, and "modify[ing] the conditions of his parole to include no supervision" so that defendant would "not be subject to parole supervision during the remainder of his parole term." CDCR contends the court: (1) miscalculated defendant's parole discharge date; and (2) had no authority to terminate defendant's "parole supervision." We agree with both contentions and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2006, defendant was convicted of receiving stolen property and sentenced to two years in prison. He was released on parole in June 2007, subject to a three-year parole term. On August 20, 2007, while on parole, he was convicted of grand theft and possession of controlled substances for sale.

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the following portion of the Discussion: Parole Discharge Date.

1

For these two new convictions, the trial court deemed defendant's sentences served but placed him on a new, overlapping three-year parole term to begin on August 20, 2007. After deducting custody credits, defendant's parole was scheduled to end on August 16, 2010. After his release, defendant absconded from parole supervision 11 times, for a total of 3,215 days, and was in jail on parole violations nine times, for a total of 699 days.

On May 23, 2019, CDCR filed a petition to revoke defendant's parole. At a hearing on the petition, the trial court asked why CDCR was "wasting time" "keeping him on parole" when he had not "committed any felonious conduct" in many years and "resources would be better spent on people [who] are seeking the resources or are . . . committing new crimes." A parole officer responded that defendant had not completed parole because "[a]s you know when they are suspended their time stops[;] they don't get credit for th[at] time." "If he's been out in the wind for six years, we don't know that he's been law abiding because he hasn't given us an opportunity to supervise him." After further discussion, the court stated it had the "authority to terminate his parole" and proceeded to do so after obtaining an admission from defendant that he violated parole by absconding "since 2013." The court issued a written order revoking, restoring, and terminating defendant's parole, finding that while defendant "consistently failed to report and his whereabouts have gone unknown," "continuing [him] on parole would not serve the interest of society. . . ."

CDCR moved for reconsideration on the grounds that defendant's discharge date—which CDCR calculated as June 15, 2020—had not passed and that the trial court exceeded its authority by terminating his parole. Defendant opposed reconsideration but argued in the alternative that "if the Court decides to reconsider its decision, the Court should modify

[defendant's] parole conditions and terminate supervision."  The court granted CDCR's motion for reconsideration stating it "acted in excess of jurisdiction" by terminating defendant's parole.  The court found defendant absconded from parole for a total of 3,225 days (the parties agree the actual number is 3,215 days) and that the new parole discharge date was September 8, 2019.  The court further "modifie[d] the conditions of [defendant's] parole to include no supervision" and ordered that defendant "shall not be subject to parole supervision during the remainder of his parole term."  CDCR appeals.[1]

## DISCUSSION

### *Parole Discharge Date*

As explained below, the trial court miscalculated defendant's parole discharge date and the correct discharge date at the time of the order was June 4, 2020.

The "period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship." (Pen. Code, § 3000, subd. (a)(1).)[2]  Thus, an offender released from incarceration after serving a prison sentence is subject to a parole term, which is usually three years.  (§ 3000, subd. (b)(1), (2)(A).)  "Upon successful completion of parole, or at the end of the maximum statutory period of parole," "whichever is earlier, the [parolee] shall be discharged from" parole. (§ 3000, subd. (b)(6).)  "The date of the maximum statutory period of parole . . . shall be computed from the date of initial parole and shall be a period

---

[1]     Defendant argues the appeal must be dismissed as moot as the parole discharge date has passed and this court therefore cannot provide effective relief.  We disagree.  There is nothing in the record indicating defendant has successfully completed parole; for example, he may have extended the discharge date further by again absconding.

[2]     All further undesignated statutory references are to the Penal Code.

3

chronologically determined. Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole. . . ." (*Ibid*.) In other words, a parole term is extended by the number of days the parolee absconds or is in jail for parole violations. (*Ibid*.; *People v. Pearl* (2009) 172 Cal.App.4th 1280, 1291 (*Pearl*).)

A parole term is extended without limit for the entire time a parolee *absconds* from parole under section 3064, which provides: "From and after the suspension or revocation of the parole of any prisoner and until his return to custody he is an escapee and fugitive from justice and *no part of the time during which he is an escapee and fugitive from justice shall be part of his term*." (Italics added.) (*Pearl*, *supra*, at p. 1290; *People v. Townsend* (2020) 53 Cal.App.5th 888, 893–894 (*Townsend*).) In contrast, there is a limit on how long a parole term can be extended by time spent *in custody on parole violations* under section 3000 subdivision (b)(6)(A), which provides: "Except as provided in Section 3064 [regarding absconded days], in no case may a prisoner subject to three years on parole be retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole." (*Pearl*, *supra*, at p. 1291; *Townsend*, *supra*, at pp. 893–894.)

Courts have interpreted the limitation of "four years from the date of his or her initial parole" in section 3000 subdivision (b)(6)(A) to mean that there is a one-year cap (from three years to four years) on parole extensions for time spent *in custody on parole violations*. (*Pearl*, *supra*, at p. 1291; *Townsend*, *supra*, at pp. 893–894.) "That is, time spent *absconding* from parole supervision suspends the parole period indefinitely, while" " ' " '[t]ime spent *in custody on a parole violation* . . . extends the parole period' " ' such that a parolee ' " 'may not be retained on parole supervision or in custody on a

4

parole violation for more than 4 years.' " ' " (*Townsend, supra*, at pp. 893–894, italics added, quoting *Pearl, supra*, at p. 1291.) Applying these principles, the *Townsend* court extended the defendant's parole discharge date by the 2,309 days he absconded from parole, plus the 334 days he spent in custody for parole violations, stating it was extending the parole term by the full 334 days because 334 days is less than the one-year maximum extension for in-custody time.

Here, defendant would have been discharged from parole on August 16, 2010 had he not absconded for 3,215 days and spent 699 days in custody for parole violations. Thus, his parole discharge date was extended by 3,215 days for absconding plus the one-year (365 days) maximum for in-custody time, for a total of 3,580 days, i.e., to June 4, 2020. The trial court therefore erred in finding defendant's parole discharge date was September 8, 2019.

Defendant asserts the correct date was actually "June 5, 2019, or, in the alternative, . . . December 4, 2019."[3] Defendant's calculations are based on his argument, also made by the defendant in *Townsend*, that the four-year limit contained in section 3000 subdivision (b)(6)(A)—i.e., "four years from the date of his or her initial parole"— means that CDCR's ability to extend his parole term for time spent in custody for parole violations expired four years from the original date his parole began and, therefore, the court lacked authority to extend his parole term based on in-custody days served after the four-year mark. (*Townsend, supra*, at p. 895.)

---

[3]   Defendant requests judicial notice of the same trial judge's orders in another case, *Townsend*, as they may "shed light" on the judge's "reasoning" in calculating the discharge date in the instant case. In light of defendant's agreement that the September 8, 2019 date is incorrect, and the fact that the *Townsend* opinion thoroughly explained and rejected the trial judge's method of calculating the discharge date, we deny the request for judicial notice on relevance grounds.

The *Townsend* court rejected this argument, as do we.  (*Ibid.*)  "[W]here a parolee absconds early, section 3064 *tolls* the initial four-year maximum period of parole. . . .  Applying this tolling provision, none of the 2,309 days Townsend spent absconding . . . counts against the four-year statutory maximum under section 3000 [subdivision] (b)(6)(A).  Townsend's maximum statutory period of parole was four years . . . plus the time Townsend spent absconding from parole supervision."  (*Townsend*, *supra*, at pp. 895–896, italics added.)  Similarly, here, because section 3064 tolled the initial four-year maximum period of parole, none of the 3,215 days defendant spent absconding counted against the four-year maximum, and defendant's discharge date was extended by the full 3,215 days plus the one-year maximum (365 out of 699 days) for time spent in jail on parole violations, for a total of 3,580 days—from August 16, 2010 to June 4, 2020.

### *Termination of Parole Supervision*

We conclude the trial court erred in terminating defendant's "parole supervision."

The court, after acknowledging it lacked the authority to terminate defendant's parole early as it had originally intended, decided instead to "modif[y] the conditions of his parole to include no supervision" and ordered that defendant "shall not be subject to parole supervision during the remainder of his parole term."  In doing so, the court cited section 1203.2 subdivision (b)(1):  "Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or *terminate supervision* of the person pursuant to this subdivision, *except that the court shall not terminate parole* pursuant to this section."  (Italics added.)  In particular, the court appears to have interpreted the first italicized term "terminate supervision" to mean that

6

"supervision" was a condition of parole that could be stricken. This interpretation is not supported by the statutory language.

" ' "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." [Citations.] The plain meaning controls if there is no ambiguity in the statutory language.' [Citation.] In interpreting a statutory provision, 'our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results.' [Citation.]" (*Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1385.)

Section 1203.2 vests a court with the authority to preside over revocation hearings when a "supervised person" violates a term or condition of his or her "supervision." (§ 1203.2, subd. (a).) The statute does not explicitly define "supervision" but uses the word throughout the statute to refer to the different *types of supervision*—such as probation or parole— available to individuals released from custody. For example, subdivision (a), which provides that a "supervised person" may be rearrested for violations of "any term or condition of the person's supervision," lists the following types of "supervision" covered by the statute: (1) probation; (2) mandatory supervision; (3) postrelease community supervision (PCRS); and (4) parole. (§ 1203.2, subd. (a).)

The statute also states twice that the court has the authority to "terminate" all types of "supervision" as a sanction for violating terms or conditions, except that it may not terminate one type of supervision—parole.

7

(§ 1203.2, subds. (a), (b)(1); *People v. Johnson* (2020) 45 Cal.App.4th 379, 397 (*Johnson*).) Specifically, subdivision (a) states that upon the supervised person's rearrest, the court "may revoke and *terminate the supervision of the person*" under certain circumstances. (Italics added.) "However, the court shall not terminate parole pursuant to this section." (§ 1203.2, subd. (a).) Subdivision (b)(1) repeats this language, stating that "the court may modify, revoke, or *terminate supervision* of the person . . . *except that the court shall not terminate parole*." (Italics added.) In other words, upon a supervised person's rearrest or a finding that the person has violated terms or conditions of the supervision, the court has the authority to terminate all *types of supervision*—e.g., probation, mandatory supervision, PRCS—*except* that it cannot terminate one type of supervision, parole.

" 'It is presumed, in the absence of anything in the statute to the contrary, that a repeated phrase or word in a statute is used in the same sense throughout.' " (*People v. Jones* (1988) 46 Cal.3d 585, 595.) When read in context, we conclude the word "supervision" as used throughout the statute refers to the different types of supervision available to individuals released from custody—probation, mandatory supervision, PCRS, and parole—and that the phrase repeated twice in section 1203.2 that the court may "terminate supervision" "except that the court shall not terminate parole" means the court has the authority to terminate all types of "supervision" as a sanction for violations of terms and conditions, except that it may not terminate parole.

*Johnson, supra*, 45 Cal.App.5th at p. 394 supports our conclusion. There, the court similarly defined the word "supervision" to refer to the different *types of supervision*, stating, "section 1203.2 pertains to proceedings relating to persons on several different types of supervision (i.e., probation,

8

parole, PRCS and mandatory supervision).” (*Johnson*, *supra*, 45 Cal.App.5th at p. 394.) The court also interpreted the term “terminate supervision” to refer to the termination of *a type of supervision* and explained that trial courts are authorized to terminate all types of supervision except parole because “an order terminating parole as a sanction for a parole violation would mean a return of the parolee to prison because he has not been successful on parole. However, as part of realignment the Legislature decided to provide that sanction only for a very limited class of parolees.” (*Id.* at p. 397.) We conclude the trial court erred in interpreting section 1203.2 to mean it had the authority to terminate “parole supervision,” and in ordering that defendant “not be supervised for the remainder of his parole term.”[4]

Finally, the parties disagree about the effect of the trial court’s order terminating “parole supervision” on defendant’s parole status. CDCR argues that by ordering the termination of “parole supervision” altogether, the court “indirectly” and “effectively discharged [defendant] from CDCR’s custody, where parole officers could neither monitor [his] whereabouts nor require him to participate in rehabilitative counseling.” In other words, it appears CDCR’s position is that defendant has not been on parole since the date of the order and therefore has the same number of days remaining on his parole

---

[4] The trial court also cited *People v. VonWahlde* (2016) 3 Cal.App.5th 1187, 1198, which is inapposite as it simply states, in dictum and in a different context, without analysis or explanation or citation to authority, that the trial court would have “had the authority to terminate parole *supervision*.” To the extent, if any, these statements regarding “parole supervision” can be interpreted to mean that section 1203.2 authorizes courts to terminate “parole supervision,” we disagree. Neither the trial court nor the parties cited any authority holding a trial court is authorized to modify parole to “terminate” “parole supervision,” or that “unsupervised parole” is an option for parolees in California. We note that at the hearing on CDCR’s petition, defendant asked, “Could I get unsupervised[?]” and the parole officer responded there was no such thing as “unsupervised parole.”

term as he did as of the date of the court's order.  Defendant disagrees and asserts that "parole supervision" is merely one aspect of parole and that other important conditions remain in place, e.g., being subject to warrantless searches, arrest, parole revocation, and sanctions for violations of any parole conditions.  Thus, defendant would argue he has been serving the remainder of his parole term during the pendency of this appeal and that those days should be counted towards satisfying his parole term.

Based on the record before us, and in light of the fact that we do not know what has transpired since the trial court's order, we conclude that the effect the order has had on defendant's parole discharge date is not for us to determine at this time.  (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 [we do not decide issues that are not ripe for appeal]; *In re Zeth S.* (2003) 31 Cal.4th 396, 405, 413–414 [appellate courts rarely accept postjudgment evidence or evidence developed after the challenged ruling is made].)  We do not know whether the order terminating "parole supervision" had the effect of actually terminating all aspects of parole supervision.  We do not know whether CDCR has continued to satisfy the objectives of parole by, for example, providing counseling or housing assistance, or by monitoring the payment of fines or fees.  (See *In re Roberts* (2005) 36 Cal.4th 575, 590 [maintaining public safety and ensuring parolees' rehabilitation are the twin objectives of parole supervision].)  We also do not know if defendant has again absconded from parole.  On remand, the trial court shall determine in the first instance whether defendant has served any days on parole since the date of its order and recalculate his parole discharge date in light of that determination and the principles set forth in this opinion.

10

**DISPOSITION**

The trial court's order setting September 8, 2019 as defendant's parole discharge date and terminating "parole supervision" under section 1203.2 for the remainder of his parole term is reversed.  The matter is remanded for further proceedings consistent with this opinion.

_____
Petrou, J.

WE CONCUR:


_____
Fujisaki, Acting P.J.


_____
Jackson, J.

_A158081/People v. Johnson_

12

Trial Court:      Alameda County Superior Court

Trial Judge:      Hon. Scott Patton

Counsel:          Office of Attorney General, Xavier Becerra, Attorney
                  General, Phillip J. Lindsay, Senior Assistant Attorney
                  General, Sara J. Romano, Supervising Deputy Attorney
                  General, Michael G. Lagrama, Deputy Attorney General,
                  for Plaintiff and Appellant.

                  First District Appellate Project, Jonathan Soglin, Jeremy
                  Price, and Nathaniel Miller, for Defendant and
                  Respondent.