Filed 9/11/23  P. v. Jones CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KORTNEY LAMONT-DAR JONES,<br><br>    Defendant and Appellant. | C095866<br><br>(Super. Ct. No. 20FE020561) |

After the trial court denied his motion to suppress evidence, defendant Kortney Lamont-Dar Jones pleaded no contest to being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)), and the trial court sentenced him to 16 months in state prison.  On appeal, defendant contends the trial court erred in denying his motion to suppress.  We affirm the judgment.

BACKGROUND

In the early morning hours of December 25, 2020, defendant was driving a car with two defective lights when Sacramento County Sheriff's Deputy Tahir Jones pulled him over.  Defendant gave his driver's license to Deputy Jones, which Deputy Jones used to conduct a records check using two different databases.  The records showed defendant

1

was on postrelease community supervision (PRCS) out of Los Angeles County until October 2022.

After conducting the records check, Deputy Jones returned to speak to defendant. Defendant denied being on PRCS; Deputy Jones responded, "I can show you if you like . . . come out real quick." Deputy Jones stepped backward so defendant could get out of the car. Defendant opened the door and continued talking to Deputy Jones before he got out of the car. Deputy Jones then directed defendant to walk to the patrol car where he conducted a patdown search of defendant.

While conducting the patdown search, Deputy Jones asked defendant: "nothing in the car, right?" Defendant responded: "I just got my little marijuana in the [(indecipherable)], that's it."[1] The two continued to talk and defendant continued to express frustration with the records showing he was on PRCS: "I've been off that stuff for so long, like come on." Defendant explained he "got out of the pen," they put him on an ankle monitor, he was supervised for a year, and they released him.

Deputy Jones asked defendant "how much weed in the bag?" Defendant responded and Deputy Jones said, "not that much? You don't care if I look through?" and waved his hand toward the open car door. Defendant said no and waved his arm toward the car in a sweeping motion. Deputy Jones walked to the open driver's side door and put gloves on his hand. At the same time, defendant leaned on the patrol car hood and crossed his arms in front of his body.

Deputy Jones searched the car. He found a semiautomatic handgun in the center console and marijuana inside a backpack. The People charged defendant with being a convicted felon in possession of a firearm. (Pen. Code, § 29800, subd. (a)(1).)

---

**1**     In the video defendant says something that sounds like bag or backpack or back there. It is difficult to comprehend. A transcript of the video indicates the word is "backpack," but the court did not admit that transcript into evidence.

Defendant moved to suppress the evidence seized during that vehicle search.  The People opposed the motion.

On August 30, 2021, the trial court heard defendant's motion to suppress contemporaneously with the preliminary hearing.  Deputy Jones testified.  Among other things, Deputy Jones testified that he asked defendant for consent:  "So the defendant stated that he had lose [*sic*] marijuana in his vehicle.  He told me that it was an amount that was personal use.  He stated that it was in the vehicle.  [¶]  I asked him if I could look into the vehicle, and he said that I could."

The trial court also watched the recording of the traffic stop from Deputy Jones's dashboard camera ("the video").  Defendant's counsel offered a transcript of the video; the court rejected the transcript saying "[t]he evidence is the video."  The court also noted the audio on the video "is barely discernable."

After engaging both counsel on who had the burden of proof regarding whether the good faith exception applied, the court asked about defendant's consent:  Was it voluntary or did defendant merely acquiesce?  The court invited the parties to submit supplemental briefs on that issue.

The parties submitted their supplemental briefs.  In addition to arguing the good faith exception did not apply, defendant argued his consent was not voluntary; he only acquiesced to the search "after an argument with the police over whether he was on PRCS."

The parties returned to court in September and the People stipulated that defendant's PRCS was terminated on May 14, 2020.  The court nevertheless denied defendant's motion.  The court found Deputy Jones's belief that defendant was on PRCS at the time of the traffic stop to be in good faith.  The court also found defendant's consent was voluntary:  "[O]n the issue whether the consent of [defendant] lawfully permitted [Deputy] Jones to search the car, I find that it does.  On this issue, one only has

3

to listen to the conversation from the body worn camera between the two men. It was conversational, almost jocular. It was not confrontational."

After the court denied his motion to suppress evidence, defendant pleaded no contest to being a felon in possession of a firearm. The court sentenced defendant to 16 months in state prison and awarded him one day of custody credit. Defendant filed a timely notice of appeal.

DISCUSSION

On appeal, defendant claims the court erred twice in denying his motion to suppress. First, he contends the trial court erred in finding the "good faith exception" applied to Deputy Jones's belief that defendant was on PRCS out of Los Angeles County. Second, he argues the trial court erred when it found defendant's consent to a search extended beyond his backpack to the entire vehicle. We agree with the first contention but not the second. We will affirm the judgment.

A.      *Standard of Review*

"In reviewing a trial court's decision to grant a motion to suppress evidence, we rely on the trial court's express and implied factual findings, provided they are supported by substantial evidence, to independently determine whether the search was constitutional. [Citation.] 'Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context of historical facts determined by the trial court.' [Citation.] It is the trial court's role to evaluate witness credibility, resolve conflicts in the testimony, weigh the evidence, and draw factual inferences. [Citation.] We review those factual findings under the deferential substantial evidence standard, considering the evidence in the light most favorable to the trial court's order." (*People v. Moore* (2021) 64 Cal.App.5th 291, 296-297.)

4

B.      *Good Faith Exception*

When applicable, the exclusionary rule "forbids the use . . . of evidence obtained in violation of the Fourth Amendment." (*People v. Pearl* (2009) 172 Cal.App.4th 1280, 1292.) The suppression of evidence gathered as a result of an unlawful seizure, however, is not automatic. (*Herring v. United States* (2009) 555 U.S. 135, 137 [172 L.Ed.2d 496] (*Herring*).) Under the good faith exception to the exclusionary rule, "evidence will not be suppressed if the police officer had an objectively reasonable belief the search or seizure was constitutionally permissible." (*Pearl*, at p. 1292.) The burden is on the prosecution to establish the exception applies, including the burden of proving that a recordkeeping error that led to the unlawful search was not the fault of any part of the law enforcement team. (*Id*. at pp. 1292-1293; *People v. Willis* (2002) 28 Cal.4th 22, 36-37.)

In *Herring*, the United States Supreme Court addressed the applicability of the good faith exception where police officers arrested the defendant based on information from a computer database showing an outstanding arrest warrant. (*Herring, supra*, 555 U.S. at p. 137.) The officers learned the information was incorrect only after they arrested and searched the defendant. (*Id*. at pp. 137-138.) The Court held the exclusionary rule in such cases "turns on the culpability of the police and the potential of exclusion to deter wrongful police conduct." (*Id*. at p. 137.) The Court explained, " 'an assessment of the flagrancy of the police misconduct constitutes an important step in the calculus' of applying the exclusionary rule" (*id*. at p. 143) and requires consideration of "the actions of all the police officers involved," including those who provided information material to the probable cause determination (*id*. at p. 140).

The Court thus reasoned that application of the good faith exception in cases involving police mistakes turns on whether the mistakes resulted from negligence "rather than systemic error or reckless disregard of constitutional requirements." (*Herring, supra*, 555 U.S. at pp. 147-148; see *People v. Robinson* (2010) 47 Cal.4th 1104, 1126.) "If the police have been shown to be reckless in maintaining a warrant system, or to have

5

knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation." (*Herring*, at p. 146; *id*. at pp. 137, 147-148.) That burden was satisfied in *Herring* by evidence that the court clerk or judge's chambers normally called the warrant clerk when a warrant was recalled, and the clerk would then enter the information in the sheriff's computer database. (*Id*. at pp. 137-138.) Although "[f]or whatever reason" that had not happened (*id*. at p. 138), the arresting investigator testified he had no reason to question the information he received about the warrant, and, further, two county warrant clerks testified that they could remember no similar failures ever having happened on their watch (*id*. at p. 147). The prosecution evidence thus established that the failure to update the arrest warrant database resulted from "isolated negligence" as opposed to systemic error or reckless disregard of constitutional requirements. (*Id*. at pp. 137, 147-148.)

The prosecution made no such showing in this case. The burden was squarely on the prosecution to establish the error did not result from deliberate, reckless, or grossly negligent conduct or recurring or systemic negligence. (*People v. Willis, supra*, 28 Cal.4th at pp. 36-37; *People v. Pearl, supra*, 172 Cal.App.4th at pp. 1292-1293.) It did not do so. Indeed, the prosecution failed to introduce *any* evidence related to the circumstances of the error, the frequency of such errors, or any practices the Los Angeles County Probation Department employs to ensure the accuracy of its records. Absent such evidence, the People failed to prove the good faith exception applied.

C.      *Consent to Search*

"Consent to a search is a recognized exception to the Fourth Amendment's warrant requirement. [Citation.] The prosecution bears the burden to prove that a warrantless search was within the scope of the consent given. [Citation.] 'A consensual search may not legally exceed the scope of the consent supporting it. [Citation.]' [Citation.] 'The standard for measuring the scope of a suspect's consent under the Fourth

6

Amendment is that of "objective" reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect? [Citations.]' [Citation.] 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of circumstances. [Citation.] Unless clearly erroneous, we uphold the trial court's determination.' " (*People v. Cantor* (2007) 149 Cal.App.4th 961, 965.)

In ruling on defendant's motion to suppress, the trial court observed one could discern the voluntary nature of defendant's consent simply by watching the video: in the video, defendant and Deputy Jones appear "conversational, almost jocular." The issue on appeal, however, is the scope of defendant's consent, not whether his consent was voluntary. As a result, the trial judge's remarks do not establish facts that are undisputed. To the contrary, the scope of defendant's voluntary consent is a question of disputed fact and in order to resolve the issue on appeal, we must consider not just the tone of the conversation between Deputy Jones and defendant, but the actual words they exchanged as well as Deputy Jones's testimony at the hearing.

At the combined preliminary hearing/motion to suppress, Deputy Jones testified that he asked defendant for consent to search "the car." A review of the video supports this recollection. In the video, you can hear Deputy Jones ask defendant to step out of the car. He then asked defendant if there was anything illegal "in the car." Defendant acknowledged he had marijuana in the car, perhaps in a bag or a backpack. They had further conversation about defendant's PRCS status. Deputy Jones then asked if he could "look through" and motioned with his arm toward the vehicle's open door. Defendant answered in the affirmative and waved his arm toward the car in a sweeping motion. Nowhere in their brief exchange did Deputy Jones or defendant indicate the search would be limited to a backpack or a bag in the car. Deputy Jones then conducted his search of the car without objection from defendant.

7

In sum, based on the totality of the circumstances, we conclude there is sufficient evidence to uphold the trial court's determination that defendant gave Deputy Jones consent to search the vehicle.

DISPOSITION

The judgment is affirmed.


/s/
WISEMAN, J.*


I concur:


/s/
MAURO, Acting P. J.

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MESIWALA, J., Dissenting.

In this search case, we have a dash cam video that both sides agree accurately records the consent given. Where this is the case, I believe we review the video independently and should not consider Deputy Jones's testimony as to his understanding of the consent. Applying this standard, the scope of defendant's consent was limited to searching his backpack that was in his car to determine the amount of marijuana inside. Because Deputy Jones's search of the center console exceeded the scope of defendant's consent, the trial court erred in denying defendant's motion to suppress.

A.      *The Video and Deputy Jones's Testimony*

In the video, Deputy Jones started by asking defendant: "Nothing in the car, right?" Defendant responded: "Just a little marijuana in my backpack, that's it."[1] After discussing defendant's post-release community supervision status,[2] Deputy Jones returned to the topic of marijuana: "How much weed in the bag?" Defendant responded, and Deputy Jones continued: "Not that much? You don't care if I look through, right?" Defendant gestured towards his car: "No, no problem."

At the motion to suppress hearing, Deputy Jones provided his interpretation of defendant's consent: "So the defendant stated that he had lo[o]se marijuana in his vehicle. He told me that it was an amount that was personal use. He stated that it was in the vehicle. [¶] I asked him if I could look into the vehicle, and he said that I could."

B.      *Standard of Review*

We conduct an "independent review" where "[t]he facts . . . are undisputed to the extent the interview is tape-recorded." (*People v. Linton* (2013) 56 Cal.4th 1146, 1177; *People v. Ayon* (2022) 80 Cal.App.5th 926, 943 [conducting independent review of video

---

[1] Both sides on appeal agree that defendant said "backpack."

[2] Defendant was indeed correct when he told Deputy Jones he was no longer on probation or parole. But Deputy Jones (incorrectly) insisted that defendant was.

evidence in appeal from denial of motion to suppress].)  In this situation, "there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting' " the video.  (*People v. Vivar* (2021) 11 Cal.5th 510, 528.)  I am mindful that independent review is not the equivalent of de novo review.  (*Id.* at p. 527.)  Under this standard, we do not second-guess factual findings that are based on the trial court's own observations, such as the credibility of witnesses.  (*Ibid.*)

The majority considers "the tone of the conversation," "the actual words they exchanged," and "Deputy Jones's testimony" in determining the scope of consent.  (Maj. opn. *ante*, at p. 7.)  But the video is clear and speaks for itself.  Neither Deputy Jones's credibility nor his recollection of the exchange add anything to the circumstances surrounding defendant's consent.  I therefore do not believe we consider his testimony in determining the scope of consent.

C.      *The Scope of Consent*

A consent-based search is a recognized exception to the Fourth Amendment's proscription against warrantless searches.  (*Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219.)  The scope of a consensual search is limited by "the terms of its authorization."  (*Walter v. United States* (1980) 447 U.S. 649, 656.)  "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  (*Florida v. Jimeno* (1991) 500 U.S. 248, 251.)  " 'Whether the search remained within the boundaries of the consent is a question of fact to be determined from the totality of [the] circumstances.  [Citation.] Unless clearly erroneous, we uphold the trial court's determination.' "  (*People v. Tully* (2012) 54 Cal.4th 952, 983-984.)

Here, the exchange between Deputy Jones and defendant established that defendant consented to the search of only his backpack.  By requesting to "look through"

2

immediately after asking how much marijuana defendant had in his backpack, a reasonable person would have thought that Deputy Jones limited the scope of the search to defendant's backpack to determine the amount of marijuana inside. And defendant consented to this limited search by responding "no problem" and gesturing towards his car where the backpack was located.

The search of the center console exceeded the scope of defendant's consent because there was no probable cause to believe that defendant's backpack would be found in the center console. (*United States v. Ross* (1982) 456 U.S. 798, 824 [the scope of a warrantless search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found"]; see *People v. Superior Court (Arketa)* (1970) 10 Cal.App.3d 122, 127 [consent to enter house to search for burglary suspects did not extend to search of closets to uncover crowbar].)

The People argue defendant did not attempt to limit Deputy Jones's search by retracting his consent. But after defendant agreed that Deputy Jones could search his backpack that was located inside his car, he proceeded to lean against the patrol car in front of the dash cam. From the dash cam's angle, which was also defendant's angle, it was impossible to tell which part of the car Deputy Jones was searching. There was also no reason for defendant to believe that Deputy Jones would open the center console while looking for his backpack. Therefore, defendant had no basis to retract, limit, or clarify his consent. Because Deputy Jones exceeded the scope of defendant's consent, the search violated defendant's Fourth Amendment rights. The trial court erred in denying defendant's motion to suppress evidence.

I would reverse the judgment, vacate the conviction, and remand the matter with directions to the trial court to enter a new order granting defendant's motion to suppress the evidence.

/s/
MESIWALA, J.

4