Filed 1/7/21  P. v. Gazzaway CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CLAYTON DAVID GAZZAWAY,<br><br>Defendant and Respondent. | A158508<br><br>(Alameda County<br>Super. Ct. No. 19-CR-012038) |

Real party in interest California Department of Corrections and Rehabilitation (CDCR) petitioned to revoke the parole of defendant Clayton David Gazzaway after he absconded 19 times and committed multiple parole violations for which he was repeatedly jailed.  Rather than grant CDCR's revocation petition, the trial court dismissed it and issued an order terminating defendant's parole supervision.  After the trial court denied CDCR's motion for reconsideration, defendant was effectively discharged from parole.

CDCR has appealed the trial court's orders on two grounds:  (1) the trial court erred in finding that defendant's parole period expired on May 1, 2018, given that his parole period was tolled for the total amount of time he absconded and extended for the total amount of time he was jailed on parole

1

violations; and (2) the trial court did not have authority to terminate his parole pursuant to Penal Code section 1203.2.[1]  We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2009, defendant was convicted of receiving stolen property and sentenced to one year and four months in prison.  Defendant was released on parole on May 15, 2010, subject to a three-year parole term.

Defendant's parole term was originally scheduled to end on May 15, 2013.  However, this discharge date did not hold because, while on parole, defendant absconded well over a dozen times for a total of 2,106 days and committed numerous parole violations for which he served 760 days in jail.[2]  Finally, on August 2, 2019, after defendant absconded for the 19th time, CDCR filed a petition to revoke defendant's parole.

A hearing on CDCR's petition was held on August 9, 2019.  The court stated on the record that, based on the court's calculation, defendant should have been discharged from parole on May 1, 2018.  The court thus deemed defendant's parole terminated "by operation of law . . . ."  In its subsequent order, the court terminated defendant's "Parole Supervision" and dismissed CDCR's petition to revoke defendant's parole given that it was filed after his discharge date.

CDCR moved for reconsideration on the grounds that the August 9, 2019 order, which essentially terminated defendant's parole and discharged him from CDCR's custody, contravened the Penal Code and must be set aside.

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

[2] Defendant's parole violations include multiple acts of drug and weapons possession, multiple violations of the terms of a restraining order, child cruelty and misappropriation of property.

2

On September 27, 2019, the court denied CDCR's motion for reconsideration, concluding that it indeed had authority under section 1203.2 to terminate defendant's parole supervision, which, according to the court, was distinct from terminating defendant's parole (which, admittedly, it could not do). According to the court, interpreting section 1203.2 otherwise would be "nonsensical."

On September 30, 2019, CDCR filed a timely notice of appeal.

## DISCUSSION

CDCR contends the trial court erred by (1) miscalculating defendant's parole discharge date based on an erroneous reading of sections 3000 and 3064 and (2) acting beyond the scope of its authority under section 1203.2 to effectively terminate defendant's parole before he completed his term.

We review both of these legal issues involving statutory interpretation de novo. (*People v. Pearl* (2009) 172 Cal.App.4th 1280, 1288 (*Pearl*); *People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.) The rules are well established. "In interpreting a statute, our primary goal is to determine and give effect to the underlying purpose of the law." (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332.) "First, we consider the statutory language and give the statute's words their usual and ordinary meaning. [Citation.] The statutory language must be construed in the context of the statute as a whole and the overall statutory scheme, giving significance to every word, phrase, sentence, and part of an act. [Citation.] If the statutory language is unambiguous, the plain meaning controls and consideration of extrinsic sources to determine the Legislature's intent is unnecessary." (*Pearl*, at p. 1288.)

## I.    *The trial court miscalculated defendant's parole discharge date.*

"A parolee's conviction of a felony 'justifies imposing extensive restrictions on the individual's liberty. . . . Given the previous conviction and the proper imposition of conditions, the State has an overwhelming interest

3

in being able to return the individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his parole.' " (*People v. Nuckles* (2013) 56 Cal.4th 601, 609–610.) Thus, "parole is a mandatory component of any prison sentence." (*Ibid.*)

Section 3000, subdivision (a)(1) provides in relevant part that a "sentence resulting in imprisonment in the state prison . . . shall include a period of parole supervision or postrelease community supervision, unless waived . . . ." (§ 3000, subd. (a)(1).) For an inmate, such as defendant, sentenced for a theft crime committed prior to July 1, 2013, "the period of parole . . . shall not exceed three years . . . unless in either case the Board of Parole Hearings for good cause waives parole and discharges the inmate from custody of the department." (§ 3000, subd. (b)(1).) "Upon successful completion of parole, or at the end of the maximum statutory period of parole . . . , whichever is earlier, the [parolee] shall be discharged from" parole. (§ 3000, subd. (b)(6).)

Here, there is no question defendant failed to successfully complete parole. We are instead concerned with whether, as the trial court found, the maximum statutory period of defendant's parole ended on May 1, 2018. The Penal Code provides a scheme for computing a parolee's discharge date: "The date of the maximum statutory period of parole . . . shall be computed from the date of initial parole and shall be a period chronologically determined. Time during which parole is suspended because the prisoner has absconded or has been returned to custody as a parole violator shall not be credited toward any period of parole . . . ." (§ 3000, subd. (b)(6).)

Regarding the suspension of time on parole triggered by a prisoner's jailing on a parole violation, section 3000, subdivision (b)(6)(A) provides in relevant part: "[I]n no case may a prisoner subject to three years on parole be

4

retained under parole supervision or in custody for a period longer than four years from the date of his or her initial parole." (§ 3000, subd. (b)(6)(A).) In contrast, regarding the suspension of time on parole triggered by a prisoner's absconding, section 3064 provides in relevant part that "no part of the time during which he is an escapee and fugitive from justice shall be part of his term." (§ 3064.) We recently explained this distinction: "Courts have interpreted the limitation of 'four years from the date of his or her initial parole' in section 3000 subdivision (b)(6)(A) to mean that there is a one-year cap (from three years to four years) on parole extensions for time spent *in custody on parole violations*. (*Pearl, supra*, [172 Cal.App.4th] at p. 1291; [*People v.*] *Townsend* [(2020) 53 Cal.App.5th 888,] 893–894.) 'That is, time spent *absconding* from parole supervision suspends the parole period indefinitely, while' ' " ' "[t]ime spent *in custody on a parole violation* . . . extends the parole period" ' " such that a parolee " ' "may not be retained on parole supervision or in custody on a parole violation for more than 4 years." ' " ' (*Townsend, supra*, at pp. 893–894, italics added, quoting *Pearl, supra*, at p. 1291.)" (*People v. Johnson* (Dec. 9, 2020, A158081) ___ Cal.App.5th ___ [pp. 4–5].)

Applying these principles to the facts of this case, we agree with CDCR that the trial court miscalculated defendant's parole discharge date. According to CDCR's worksheet, defendant would have been discharged from parole on May 15, 2013, had he not absconded for 2,106 days and spent 760 days in custody on parole violations. CDCR calculates that defendant's parole discharge date was extended by each day that he absconded (2,106 days) plus the one-year (365 days) maximum for in-custody time, resulting in a discharge date of February 18, 2020, rather than, as the trial court found,

May 1, 2018.  CDCR's analysis is consistent with our construction of section 3000, subdivision (b)(6)(A) and section 3064, set forth above.

Defendant, however, argues the correct date of his discharge from parole was January 7, 2018.[3]  He reasons:  "[Section 3000, subdivision (b)(6)(A)] provides that '[e]xcept as provided in Section 3064, in no case may a [parolee] subject to three years on parole be retained under parole supervision or in custody for a period longer than four years *from the date of his or her initial parole*.'  (§ 3000, subd. (b)(6)(A), emphasis added.)  Hence, when 'initial parole' is three years, custody for parole violations can extend parole supervision up to four years 'from the date of his or her initial parole.'  (*Ibid*.)  Here, four years from the date of [defendant's] initial parole expired on May 14, 2013."  (First bracketed insertion added.)

This division recently rejected essentially the same argument raised by the defendant in *People v. Johnson*, *supra*, ___ Cal.App.5th ___, which, in turn, followed another recent decision, *People v. Townsend*, *supra*, 53 Cal.App.5th 888 (*Townsend*).  We explained:  "The *Townsend* court rejected this argument, as do we.  [Citation.]  '[W]here a parolee absconds early, section 3064 *tolls* the initial four-year maximum period of parole. . . .' (*Townsend*, *supra*, at pp. 895–896, italics added.) . . . [H]ere, because section 3064 tolled the initial four-year maximum period of parole, none of the 3,215 days defendant spent absconding counted against the four-year maximum, and defendant's discharge date was extended by the full 3,215 days plus the one-year maximum (365 out of 699 days) for time spent in jail on parole

---

[3] Defendant contends the trial court's parole discharge date of May 1, 2018, was a miscalculation that did not impact the overall correctness of the trial court's order to terminate his parole.

6

violations, for a total of 3,580 days—from August 16, 2010 to June 4, 2020." (*People v. Johnson, supra*, ___ Cal.App.5th ___ [p. 6].)

We adhere to this reasoning. As in *People v. Johnson*, *supra*, because section 3064 tolled the initial four-year maximum period of parole, none of the 2,100-plus days defendant spent absconding may be counted against the four-year maximum, and his discharge date must be extended by the full number of days he absconded (which appears to be 2,106)[4] plus the one-year maximum (365 out of 760 days) for time spent in jail on parole violations. Under this analysis, the trial court erred in finding that defendant completed his parole period on May 1, 2018, before CDCR filed its petition to revoke his parole.

## II.    *The trial court lacked authority to terminate parole.*

CDCR further contends the trial court violated section 1203.2 and acted in excess of jurisdiction when terminating defendant's parole. Defendant responds that CDCR misconstrues the trial court's order and findings. According to defendant, the court did not terminate his parole; rather, the court simply found that his parole period terminated "by operation of law" on May 1, 2018.

Our review of the record confirms that when denying CDCR's motion for reconsideration, the trial court found that while section 1203.2 prohibits courts from terminating a parolee's parole, the court nonetheless possesses

---

[4] CDCR acknowledges there are at least two errors in its worksheet calculating defendant's parole discharge date. We leave it to the parties on remand to present the trial court with correct calculations of defendant's time spent absconded from parole supervision and in custody on parole violations so that, consistent with this opinion, the court can determine his actual parole discharge date.

authority to terminate a parolee's *supervision*, which is what the court then did.  The trial court misinterpreted section 1203.2.

Section 1203.2 subdivision (b)(1) provides:  "Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or *terminate supervision* of the person pursuant to this subdivision, *except that the court shall not terminate parole* pursuant to this section."  (Italics added.)  Subdivision (b)(1), in turn, reiterates and expands on subdivision (a), providing in relevant part:  "[W]henever a supervised person who is subject to this section is arrested . . . , the court may order the release of a supervised person from custody under any terms and conditions the court deems appropriate.  Upon rearrest, or upon the issuance of a warrant for rearrest, the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their [*sic*] supervision . . . .  *However, the court shall not terminate parole pursuant to this section*."  (§ 1203.2, subd. (a), italics added.)

In *People v. Johnson, supra*, ___ Cal.App.5th ___, this division also faced the question of whether section 1203.2 bars the court from terminating a parolee's parole but permits the court to terminate a parolee's "parole supervision."  Responding to this question in the negative, we concluded that parole is simply one of several types of supervision addressed in section 1203.2 and, as such, that the legislative ban on terminating parole *is* a ban on terminating parole supervision:  "Section 1203.2 vests a court with the authority to preside over revocation hearings when a 'supervised person' violates a term or condition of his or her 'supervision.'  (§ 1203.2, subd. (a).)

8

The statute does not explicitly define 'supervision' but uses the word throughout the statute to refer to the different *types of supervision*—such as probation or parole—available to individuals released from custody. For example, subdivision (a), which provides that a 'supervised person' may be rearrested for violations of 'any term or condition of the person's supervision,' lists the following types of 'supervision' covered by the statute: (1) probation; (2) mandatory supervision; (3) postrelease community supervision (PCRS) [*sic*]; and (4) parole. (§ 1203.2, subd. (a).)

"The statute also states twice that the court has the authority to 'terminate' all types of 'supervision' as a sanction for violating terms or conditions, except that it may not terminate one type of supervision—parole. (§ 1203.2, subds. (a), (b)(1); *People v. Johnson* (2020) 45 Cal.App.5th 379, 397 . . . .) Specifically, subdivision (a) states that upon the supervised person's rearrest, the court 'may revoke and *terminate the supervision of the person*' under certain circumstances. (Italics added.) 'However, the court shall not terminate parole pursuant to this section.' (§ 1203.2, subd. (a).) Subdivision (b)(1) repeats this language, stating that 'the court may modify, revoke, or *terminate supervision* of the person . . . *except that the court shall not terminate parole*.' (Italics added.) In other words, upon a supervised person's rearrest or a finding that the person has violated terms or conditions of the supervision, the court has the authority to terminate all *types of supervision*—e.g., probation, mandatory supervision, PRCS—*except* that it cannot terminate one type of supervision, parole.

" ' "It is presumed, in the absence of anything in the statute to the contrary, that a repeated phrase or word in a statute is used in the same sense throughout." ' (*People v. Jones* (1988) 46 Cal.3d 585, 595.) When read in context, we conclude the word 'supervision' as used throughout the statute

9

refers to the different types of supervision available to individuals released from custody—probation, mandatory supervision, PCRS [*sic*], and parole—and that the phrase repeated twice in section 1203.2 that the court may 'terminate supervision' 'except that the court shall not terminate parole' means the court has the authority to terminate all types of 'supervision' as a sanction for violations of terms and conditions, except that it may not terminate parole." (*People v. Johnson, supra*, ___ Cal.App.5th ___ [pp. 7–8].)

From this analysis, which we apply here, it is clear the trial court in this case was mistaken to conclude it was authorized under section 1203.2 to terminate defendant's "parole supervision," and that terminating his "parole supervision" was not the same as terminating his parole. Simply put, no legal distinction may be drawn between parole supervision and parole for purposes of section 1203.2. Parole is simply one type of supervision and, under section 1203.2, the trial court "may not terminate parole."

Accordingly, we reverse the trial court's August 9, 2019 order dismissing CDCR's petition and terminating defendant's parole as well as its September 27, 2019 denial of CDCR's petition for reconsideration.

## DISPOSITION

The trial court's orders of August 9, 2019, and September 27, 2019, are reversed. The matter is remanded for further proceedings consistent with this opinion.

_____

Jackson, J.


WE CONCUR:


_____

Siggins, P. J.


_____

Fujisaki, J.


A158508/*People v. Clayton David Gazzaway*


11